(37 Misc. Rep. 78.)

## BROWN v. GUICHARD.

(Supreme Court, Special Term, New York County. January, 1902.)

BANKRUPTCY—PREFERENTIAL PAYMENTS.

> Transfers by a bankrupt, before voluntarily becoming such, to a creditor, where the bankrupt had at all times concealed from the creditor the fact that he was indebted to another, and where the creditor acted in good faith after personal examination of the books of the bankrupt, which showed him solvent, and where the bankrupt would have been solvent at such time but for the debt which he had concealed, will not be set aside as preferences in violation of the bankruptcy act.

Action by Alfred L. Brown, trustee in bankruptcy of William Mutch, against Antoine Guichard. Complaint dismissed.

Blair & Rudd, for plaintiff.

Gould & Wilkie, for defendant.

FITZGERALD, J. The subjoined facts were fully established by the evidence upon the trial: On May 2, 1899, Mrs. Gertie A. Gorman loaned the sum of $15,000 to William Mutch, and took his note for that amount, payable one year after date at the Second National Bank, with interest at the rate of 5 per cent. Mutch purchased with this money machinery of the value of over $12,000, which he placed in the Jewell Silk Mill, at Paterson, N. J. The balance was used

for the proper equipment of this property, and upon its completion he entered upon the business of manufacturing silk. No entry of this transaction was made in his books. In August following, being desirous of obtaining credit from the defendant, he represented to him that his assets amounted to $40,000, and that the factory was free and clear of debt, and referred him also to a number of persons in the trade, of whom defendant could inquire regarding his (Mutch's) financial standing. One of these persons informed defendant that Mutch could obtain credit from any of his (defendant's) competitors. Relying upon this information, defendant sold Mutch various bills of goods during the remainder of the year 1899, amounting in the aggregate to $17,516.51, for which notes were given, all of which were duly paid upon maturity. In January, 1900, Mutch gave a statement of his affairs to defendant, which statement showed a surplus of assets over liabilities amounting to $3,938.59, and, between that time and the following June, Mutch purchased from the defendant merchandise amounting in all to $19,626.43. Various notes were given in payment of this amount, all of which upon maturity were duly met, until August 15th of that year. A further statement was presented to defendant at this time from which it appeared that the assets of Mutch exceeded his liabilities, and showed a balance in his favor of $8,574.14. Mutch was unable to meet a note due and payable August 27, 1900, for the reason, he claimed, that the market was blocked, and he could not make deliveries of his goods, and consequently could not possess himself of the requisite money to pay this note at maturity. Under these circumstances, he requested defendant to meet it for him, which defendant did, taking in consideration of his doing so a new note for $2,062.92, and in addition thereto a mortgage executed by Mutch August 29th on the Jewell Mill, and on the goods belonging to Mutch held on consignment by Passavant & Co. From a further statement furnished defendant at this time, the assets of Mutch were shown to exceed his indebtedness. Paladini & Co. had at the same period caused an examination of Mutch's books to be made by an expert accountant, the result of which was called to defendant's attention, and from which it appeared that the assets exceeded the liabilities $8,000. In the early part of October following, Mutch found himself again unable to meet a note about to mature, and appealed to defendant to aid him in his predicament. Defendant, before agreeing to this proposition, insisted upon examining the books, which he did, with the assistance of his own bookkeeper, and this examination disclosed ample avails to meet all accruing obligations, and defendant then agreed to meet the October note. As a consideration of his doing so, Mutch executed to defendant on October 6, 1900, a bill of sale of the Jewell Mill, under which, and on the date thereof, defendant took possession of the mill and its contents. This bill of sale also covered the goods on consignment with Passavant & Co. Notice of this sale was promptly sent to each of Mutch's creditors, as shown by his books. On the date of the execution of this bill of sale, Mutch further furnished to defendant at the office of his (defendant's) attorneys a statement showing liabilities of $21,520.45. Excluding the-

amount due defendant, and the claim of Compton & Knowles, which was secured by a chattel mortgage upon the looms in the factory, Mutch's total other indebtedness, as shown by this statement, amounted altogether to but $1,861.78. Besides his interest in the mill, computed at $10,000, he had goods therein valued at $2,000, and a quantity of manufactured silk on consignment with Passavant & Co., in which, after making allowance for advances, there was remaining an equity of $11,000, making his total assets $23,000, as against $21,520.45 liabilities.

This summary of the bankrupt's business from its commencement to the date of the execution of the bill of sale brings us to the consideration of the legal question as to whether or not the proofs submitted by plaintiff in support of the alleged preferences are sufficient to warrant his claim that they should be set aside as void under the provision of the national bankruptcy act. This action is brought by the trustee in bankruptcy on behalf of the creditors, but the only claimant on whose behalf the remedy is really sought is Mrs. Gertie A. Gorman, who appeared on the schedule in bankruptcy as a creditor for $15,000. Defendant, it must be remembered, after having taken possession of the mill, conducted the business (with Mutch as manager) until he received his first notice of Mrs. Gorman's claim, which was about a month later, when she brought an action upon the note. Immediately thereupon, Mutch filed a voluntary petition, and was on the same day, November 19, 1900, by an order of the United States district court for the Southern district of New York, adjudged a bankrupt. The testimony of the defendant was that, from his information and the examinations he had made into Mutch's affairs, he regarded the embarrassment as temporary, and caused by his (Mutch's) overdrawing his personal account, and that, if bounds could be set upon this extravagance, the business was entirely solvent and could be put upon a paying basis.

Chapter 1, § 1, cl. 15, of the bankruptcy act, defines "insolvent" in these words:

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

If we exclude the Gorman note, the plaintiff has assuredly failed to prove the insolvency of the bankrupt at the time of the alleged preferences set forth in his complaint, alike as to the first and second causes of action. If we include that note, the fact of his insolvency is established beyond doubt. That defendant was throughout all these dealings in absolute ignorance of the existence of the note is not only affirmatively established, but is undisputed upon the record. Section 60 of the act (the provision alleged to have been violated) reads:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person. or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than

74 N.Y.S.—47

any other of such creditors of the same class. (b) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

In the absence of knowledge of the debt due Mrs. Gorman, what reasonable cause did defendant have to believe that it was intended thereby to give him a preference, or, in other words, what reasonable cause to believe prior to October 6, 1900, that Mutch was insolvent? I am unable to discover any well-grounded cause for even a suspicion. Mutch's conduct towards Mrs. Gorman may have been dishonorable. His concealment of the substantial amount of money advanced by her to enable him to engage in business as a manufacturer may be censurable. He may be an ingrate, or worse. But his secret actions, motive, and conduct are not chargeable against a reputable business man with whom his relations were entirely of a commercial character, whose knowledge of him was limited to the information acquired from his written statements, his books, and his references. Some of these very statements were seen by Mrs. Gorman at the same time they were being used for the purpose of inducing defendant to extend credit on the faith of their truthfulness. To set aside security taken, or to direct the payment over of money received, under such circumstances, would amount to declaring that information subsequently ascertained should be permitted to characterize the nature of a transaction. This would not only be illogical, but in direct opposition to all of the adjudications. "The creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency. That it is not essential that the creditor should have actual knowledge of, or belief in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent. That if facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose." In re Eggert, 43 C. C. A. 1, 102 Fed. 741. No fact, shown to be within the knowledge of the defendant, which would put a prudent man upon inquiry, is established by the evidence. The plaintiff has failed to prove this element, material under all the authorities. Grant v. Bank, 97 U. S. 80, 24 L. Ed. 971; Stucky v. Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640; Barbour v. Priest, 103 U. S. 293, 26 L. Ed. 478; Bank v. Cook, 95 U. S. 343, 24 L. Ed. 412. By agreement between plaintiff and defendant, dated February 27, 1901, the Jewell Mill was sold, together with a quantity of silk, raw and manufactured, therein contained. The proceeds, less expenses and amounts paid to satisfy certain liens, were deposited in the Manhattan Trust Company pending the determination of this action. The defendant is entitled to judgment dismissing the complaint.

Complaint dismissed.